STATE OF VERMONT

ENVIRONMENTAL COURT

In re: Appeal of Cumberland      }
Farms, Inc. and Casella Waste     }
Management                        }    Docket No. 185-11-01 Vtec
                                  }
                                  }

## Decision and Order

Appellants Cumberland Farms, Inc. and Casella Waste Management appealed from a decision of the Development Review Board (DRB) of the City of Burlington approving Appellants' application for a convenience store with gasoline sales, but with conditions amounting to the disapproval of a proposed 92' x 20' canopy. The only issue raised by Appellants is whether the canopy as proposed should instead be approved. As the City's cross-appeal was withdrawn, the only issue before the Court is whether the canopy should be approved.

Appellants are represented by Jon Anderson, Esq.; the City of Burlington[1] is represented by Kimberlee J. Sturtevant, Esq. An evidentiary hearing was held in this matter before Merideth Wright, Environmental Judge, who also took a site visit alone, by agreement of the parties. The parties were given the opportunity to submit written requests for findings and memoranda of law. Upon consideration of the evidence, the site visit, and the written memoranda and proposed findings, the Court finds and concludes as follows.

Appellants propose to demolish an existing convenience store located on a corner lot at the southwest corner of the Pine Street and Lakeside Avenue intersection, in the Enterprise zoning district and in a Design Review district.. The existing lot contains gasoline service between the existing convenience store and Pine Street, within the 25' front yard setback. The existing lot contains no definition of curb cuts or access onto the lot from either street. Appellants propose to build a 3,710 square foot convenience store building and to place four gasoline pump islands between the convenience store and Lakeside Avenue. The location of the proposed pump islands on the Lakeside Avenue side of the building and the location of the building setback from Pine Street[2] are not at issue in the present case. Although those factors were issues before the DRB, those issues were not ultimately raised in the appeal and are not before the Court.

The City argues that the DRB approval conditions eliminating the large canopy were integral to the remainder of the DRB decision approving the location of the building setback from the two streets. However, whatever was the calculus of the individual DRB members in voting to approve the building location, the fact remains that no appeal of the building location or the gasoline pump locations was before the Court. The only question is whether the proposed canopy, over the approved gasoline pump positions, meets the criteria for its approval.

The Pine Street corridor is a mixed use area in transition from a primarily industrial area to an area including office and retail uses and residential uses. The pedestrian use of Pine Street is

increasing and the City is encouraging this use to enhance the quality of this design review district. The City is encouraging the provision of sidewalks and other pedestrian amenities (such as bus shelters) and is encouraging the placement of new construction closer to the street in support of the pedestrian scale of the street and to minimize the importance of automobile-related uses as seen from the street. The City encourages automobile-related uses such as parking to be placed on the side or back of lots so that pedestrian users of the street can walk and have access to the buildings without traversing great expanses of parking lot.

The history and character of the area reflects a 19th century pattern of factory and railroad uses and structures, a mid-20th century pattern of moderately-sized commercial buildings with associated parking, and a relatively recent effort to improve pedestrian amenities along Pine Street. The 19th century factory and institutional buildings, including the former Champlain School, are characterized by factory design elements primarily in brick and stone. The 19th century factory and railroad uses include a design element that may be described as a metal awning or shed-type roof sheltering loading docks, doorways, and railroad platforms. Railroad tracks and sidings continue to be visible in the area in connection with the older industrial buildings, even if they are in an adaptive use rather than their original railroad use. A rail line and commuter rail stop are located within a quarter mile, or comfortable walking distance, of the site. The Pine Street corridor is becoming more and more a walkable pedestrian environment, as pedestrian amenities are added and as buildings are put to uses that attract pedestrians. This development is consistent with the municipal development plan.

The scale of the newer commercial buildings in the area is moderate; most are much smaller than the so-called 'big box' type of highway commercial uses. Parking lots serving these commercial buildings are also moderate in size in relation to the buildings they serve. The pedestrian use of the area can be encouraged and enhanced by continued improvements in design, aesthetic quality, and the addition of pedestrian amenities such as sidewalks and trees. New construction in the area includes the Department of Public Works (DPW) building across Lakeview Avenue from the site. The DPW building is beautifully designed to echo the areas 19th century brick and stone materials, metal roofs, and roofed doorways or loading docks, in a functional modern building, well-landscaped and welcoming pedestrians to its corner entrance.

Appellants propose to install a 92' x 20' canopy over all four pump islands. The proposed canopy ranges from 14' 6" in height to a peak of 18' 6". The proposed canopy is a separate structure not connected to the convenience store. Under footnote 31 to Table 5A of the Zoning Ordinance, addressing the 'convenience store' category of uses, the canopy is required to be reviewed under the conditional use criteria of Article 17 and the design review and site plan criteria of Articles 6 and 7 to determine if it is appropriate and, if it is, its appropriate location, size, height and design. The City argues that the canopy does not comply with §§ 6.1.10(a) and (g) and 17.1.5(a)(2) and (4) of the Zoning Ordinance.

Section 6.1.10(a) requires that the proposed development relate appropriately to its environment. Unlike many modern gasoline station canopies, the proposed canopy is designed with a sloping hip roof design, echoing the look of the sheltering roof over a pedestrian railroad platform. The internal ceiling of the canopy does not come down flush with the edge of the roof; rather, a hollow space is provided, increasing the sheltering or umbrella-like design of the structure.

Because of this design feature, the canopy as proposed does not give the appearance of a massive floating horizontal plane. The necessary light fixtures and fire-suppression equipment are concealed within the canopy, and the lighting from beneath the canopy is set at a level consistent with the levels recommended for a mixed-use area. The canopy support columns are linked with the roof by iron brackets that echo the look of 19th century support brackets. Although the canopy is tall and covers an automotive function, it also shelters pedestrians moving across the lot from Lakeview Avenue to the convenience store building. The proportions of the canopy's height to its width and length echo the proportions especially of the long and narrow railroad-related uses in the area. When viewed against the background of neighboring buildings, and especially when viewed against the backround to the south (the convenience store building in a similar style) or to the north (the DPW building in a similar style), the canopy blends with the established neighborhood pattern and style of structures. With the sidewalks and proposed tree plantings, the proposed canopy is in scale with existing buildings in the vicinity which have a functional or visual relationship to the proposed canopy. In particular, the canopy as proposed relates well in design and materials to the approved convenience store building and to the Department of Public Works complex across Lakeview Avenue. The fact that there are no other gasoline station canopies in the area does not preclude this gasoline station canopy. What is required is that the proposed structure have a relationship, in function, materials, design or appearance to the other buildings in the vicinity. Section 6.1.10(g) requires that the applicant integrate special features into the design. "Special features" are defined by a list of examples, such as exposed storage areas, or machinery and equipment installation, or lighting. The canopy itself integrates its lighting and fire suppression systems well into the design of the canopy. As the function of the canopy is to shelter the fueling positions, and the location of the fueling positions is not at issue in this appeal, the fact that the canopy is not attached to the building does not violate this design standard.

Sections 17.1.5(a)(2) and (4) require that the proposed canopy not adversely affect the character of the area and not adversely affect bylaws then in effect. The City does not argue that any bylaws are adversely affected other than the character of the area requirement and the design review standards discussed above. The proposed canopy does not adversely affect the character of the area. It is designed to fit into the character of this mixed use area with its 19th century railroad platform connotations and the sheltering effect of its overhang. The relationship of the new sidewalks and street trees to the proposed canopy improves the pedestrian use of this corner, compared to the former design of the lot.

Based on the foregoing, it is hereby ORDERED and ADJUDGED that the project is approved with the canopy as designed.

Dated at Barre, Vermont, this 29th day of May, 2002.

_____
Merideth Wright
Environmental Judge


Footnotes

1.    Despite Appellants' characterization of the other party in this appeal as an "Opponent Group," it is the City which is the party in this case. Any questions Appellants may have regarding the extent to which the City's position is widely held within the City's administration is not before this Court for resolution.

2.    However, we note that the building location with respect to Pine Street in fact aligns well visually with the Department of Public Works building directly to its north across Lakeside Avenue, due to the change in width of Pine Street in that vicinity.